UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 16-cv-22933-SCOLA/OTAZO-REYES

AT LAW AND IN ADMIRALTY

WAYNE COSMO,

       Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT [D.E. 76]

The Plaintiff Wayne Cosmo hereby files his response to Defendant's Motion for Final Summary Judgment [D.E. 76] and says:

### I.     BACKGROUND

This case is about an event which Carnival Cruise Line (hereinafter Carnival) chose to organize on a wet, slippery deck without first properly inspecting and drying the deck. Carnival called the event the "Last Man Standing Competition." [Carnival's "Fun Times" for August 4, 2015; D.E. 84, 31-10-25; 32; Exhibit 2].

Carnival's Entertainment Staff person, Terrance Phillips, chose the location for the event and acted as the MC that day. Phillips chose the Lido deck which is the main outdoor deck on this cruise ship, the Carnival Miracle. That deck is high traffic and is filled with rows of chaise lounge chairs, upright chairs, and tables. The rules which Phillips announced for the event were that the cruise passenger participants were required to secure from other people on the deck certain items which were announced one by one by the Carnival MC. When a participant obtained the item, he or she had to get back to the Carnival MC as quickly as possible to avoid being the last person out. The last person back to the Carnival MC for each round was eliminated. Because this was a competition to avoid elimination, participants were rushing, running, and jumping over chairs and tables to secure the items and get back to the MC before the others. And **Carnival expected**

participants to hurry, rush, run or jump when competing against each other during "Last Man Standing". [D.E. 82, 111:24-25; 112: 1-24; 127: 3-21; 129: 1-4].

Unbeknownst to the participants until later, the shiny resin surface of the Lido deck floor was wet in several areas before the event started. During the event, participants did what people do in races; They rushed, ran, and jumped over obstacles on the deck such as the ends of chaise lounge chairs. Participants other than Cosmo, at least one of which is caught on the video produced by the cruise line, jumped over objects. And at least two participants other than Cosmo slipped and fell during the race before Cosmo. The rushing, running, and jumping and the slip and falls would have been visible to Carnival's MC Phillips. Yet, Carnival did not stop or move the event (even after Wayne Cosmo fell and reported his fall to the MC).

Cosmo like so many others in the competition jumped over the end of a chaise lounge chair. But there was a puddle of water not readily visible to Cosmo next to that chair and on the shiny resin surface. Testing of the resin floor surface has revealed that the surface fails standards for coefficient of friction when wet and therefore is unreasonably slippery when wet.

Cosmo reported the fall to the MC and then to the infirmary. Carnival investigated the fall. Later in the cruise, Carnival's Cruise Director Cory Rogers told Cosmo **"I have told those guys not to play games by the pool 100 times."** [D.E. 79, 248: 9-10; 339: 1-3].

## II.     DISPUTED MATERIAL FACTS.

1.  Admit.

2.  Admitted in part. Denied that "Last Man Standing" was simply a game. "Last Man Standing" was a planned and organized event hosted by Carnival during Cosmo's cruise aboard. [D.E. 79, 25:18-22; 28:21-25; 159:13-21; 171:21-24; 338: 17-20]; [DE 90 ¶3]; [D.E. 88, 12: 11-19]; [D.E. 82, 64: 21-25]. Carnival advertised the "Last Man Standing" competition, not just a game, in its "Fun Times" on August 4, 2015. [D.E. 84, 31-10-25; 32; Exhibit 2]; [D.E. 82, 62:23-25; 63; 64-1-3]. Denied that the event was hosted on the Lido Deck. Carnival crewmember, Terrance Phillips, hosted the competition near the pool on the Lido Pool Deck of Carnival's *Miracle* on the date of the incident, not simply the Lido Deck. [D.E. 79, 17:15-20; 19: 8-11]; [DE 90 ¶3]. Carnival chose to host the competition on the Lido Pool Deck. [D.E. 82, 82:13-25; 83: 1-15]; [D.E. 79, 331: 18-21]. Terrance Phillips urged Cosmo to participate because he was short players to compete in the game. [D.E. 79, 165:17-19; 166:25; 167:1-5]; [D.E. 90 ¶4].

3.  Admitted in part, and denied in part. Denied that the API Syntheteak flooring was intended for the marine purposes used by Carnival during "Last Man Standing". On March 4, 2017, Will Martin, AIA, NCARB, CXLT licensed architect, tested the resin (API Syntheteak) floor on

Carnival *Miracle*'s Lido deck in the area of Cosmo's fall. [D.E. 91 ¶2, 8-9]. Martin tested using the English XL tribometer which is generally accepted in engineering as reliable for such testing. Martin found that the floor has scoring on it and that the scoring and wear on the floor is inconsistent from one area to the other. The one consistency is that the floor in the area of Cosmo's fall tested when wet below the minimum coefficient of friction. [D.E. 91¶9-10]. Martin also concluded that the three locations closest to Mr. Cosmo's fall, the floor's wet slip resistance when wet parallel to the scoring an average coefficient of friction 0.45 and an average perpendicular score of 0.40. [D.E. 91¶11-12]. ASTM International publishes F1166 Standard Practice for Human Engineering Design for Marine Systems, Equipment, and Facilities which requires "[w]alkways, passageways, **decks** and all other walking surfaces shall have a nonskid surface sufficient to provide a **coefficient of friction (COF) of 0.6 or higher** measured when the surface is wet. [D.E. 91¶37]. Additionally, Carnival's own internal safety requirements for guest common area flooring materials require that "areas of the vessel where there is significant potential for liquid accumulation condensation or changes in elevation such as ramps or stairs, the flooring shall at least have an "R" category of 9 and a minimum static coefficient of friction (wet)(SCOFw) of 0.6". [D.E. 91¶39]. Therefore, Carnival's API Syntheteak flooring on the Lido Pool Deck while maybe intended for marine purposes, **fails** to meet both Carnival's internal safety standards when wet as well as the minimum standards required by published safety standards for marine environments. [D.E. 91¶9-12, 24-42, 66].

4. Denied. See ¶3. Carnival's API Syntheteak flooring fails to meet industry safety standards or Carnival's own minimum safety standards. [D.E. D.E. 91¶9-12, 24-42, 66]. API Corporate Representative, Don Sampson, testified that API's floor system installed on the Carnival Miracle's Lido Pool deck could be slippery when wet with puddles of water. [D.E. 80, 28: 17-22]. Additionally, the API floor systems wear through use over the years. [D.E. 80; 27: 10-13].

5. Denied. The Motion fails to properly cite to the record. Carnival chose to host the "Last Man Standing" competition in a high traffic area with rows of pool lounge chairs, tables, chairs, food and drinks. [D.E.82, 23-24:1-9]; [D.E. 88, 30:12-25; 31:1-6; 53:4-25; 54:1-14]. Carnival did not clear the game area of physical obstacles or passengers not participating in the racing competition. [D.E. 82, 28:10-16; 32: 2-13; 34: 7-19; 36:26-25; 37:1-3]; [D.E. 88, 55:24-25; 56:1-9]. Carnival's host, Terrance Phillips, instructed passengers to line up chairs in the stage area. [D.E. 82, 31: 12-20]; [D.E. 90 ¶5]. Participants are allowed to go ***anywhere*** on the Lido Pool Deck to participate in the competition. [D.E. 82, 26: 6-19]; [D.E. 90¶6].

3

6. Admitted in part. Denied in that unlike musical chairs music is not played alerting participants to race for a chair nor accurately describes the event as to accurately reflect how Carnival planned, organized, and prior knowledge regarding the competition. Denied that it mischaracterizes the competitions dynamic based on Carnival's instructions. Carnival's competition "Last Man Standing" is a racing competition. [D.E. 88, 50; 4-16]; [D.E. 79, 174: 5-10, 22-25; 175: 7; 333:18-25; 334:1-3]. Time is a key element of the competition. [D.E 79, 334:12-19]; [D.E. 82, 17:1-4, 14-19]; [D.E. 88: 49: 23-25; 50: 4-16; 52:22-25; 53:1-3]. Carnival instructs passengers to compete against each other to find a named item anywhere on the Lido Pool Deck and to beat each other so as to not be the last passenger back. [D.E. 82, 10: 7-16; 17: 1-4, 14-19]; [D.E. 79, 206:7-14]. The last passenger back is disqualified and will not have a chair. [D.E. 82, 9: 15-19]; [D.E. 90¶5]. **Carnival expected participants to hurry, rush, run or jump when competing against each other during "Last Man Standing".** [D.E. 82, 111:24-25; 112: 1-24; 127: 3-21; 129: 1-4]. Carnival knows that participants will do whatever it takes to win the competition. [D.E. 82, 12:7-13, 25; 13:1; 18:15-16]; [D.E. 88, 52:22-25; 53:1-3]. Carnival did not set boundaries for the competition and participants can go *anywhere* on the Lido Pool Deck. [D.E. 82, 26: 6-19]; [D.E. 90¶6]. At no time did Cosmo or another passenger/witness, Samar Hmeidan, hear Carnival's MC Terrance Phillips tell the competition participants not to run or jump. [D.E. 79, 18:9-25; 19:1-3]; [D.E. 90, ¶6].

7. Admitted.

8. Denied. See ¶6. Cosmo testified that he was instructed about the basic rules of the competition but that he should hurry. Cosmo understood the key part of the competition "to get back before anybody else, so you didn't get disqualified, making it a race of speed". [D.E. 79, 334:12-19]. Carnival instructed Cosmo to beat the other participants back to the chairs at the front of the stage to avoid disqualification. [D.E. 79, 333: 18-25; 334:2-3, 12-19].

9. Admitted.

10. Denied. Terrence Phillips testified as to what participants *should* receive as reward at the end of the competition, but there is no record evidence that on August 4, 2015 the participants, including Cosmo, received a medallion for participation.

11. Admitted.

12. Admitted in part, denied in part. Admitted that it was daytime, bright sunlight and sufficient light for Cosmo to see. Denied that Cosmo did not problems observing his surroundings. Cosmo could not see the five foot by two-foot puddle in which he slipped and fell. [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 228:17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14]. Carnival's Lido

4

Pool Deck floor is shiny and the water blended with the flooring. [D.E. 79, 23: 8-9; 31: 17-18; 37: 7-9; 228:17-20; 229:15-18; 327:24-25; 328:1-5, 16-24; 342: 8-11, 17-18].

13. Admitted in part, Denied in part. Denied that prior to hosting "Last Man Standing" Phillips inspected the deck where participants competed. Denied the pool deck was dry let alone dry enough for the event. Cosmo testified that he never saw anyone from Carnival inspect the area before starting the competition. [D.E. 79, 338:6-15]. One of the participants competing in the first round slipped and fell with a chair on the way back. [D.E. 79, 180:18-25; 181:1]. Carnival did not stop the competition when the participant fell when retrieving a chair. [D.E. 79, 337:4-8]. Carnival's host, Terrance Phillips, testified that "[i]f you're asking me if it [the area on the pool deck used for the competition] has to be clean and dry before we can perform the activity? **No, it doesn't have to be clean and dry because chances are it won't be**". [D.E. 82, 47:23-25; 48:1]. Terrance Phillips admitted that on August 4, 2015 "**it's safe to say there could have been water, as there's a pool.**" [D.E. 82, 89:13-20]. Additionally, "there's a floor and there's a pool. So **of course, there's going to be water**" on the Lido Pool Deck floor. [D.E. 82, 89:22-24]. (Thus, Carnival knew that this was an area with a repetitive water and maintenance problem).

14. Admitted

15. Admitted in part. Denied there was no incident. Cosmo witnessed of the participants competing in the first round slipped and fell with a chair on the way back. [D.E. 79, 180:18-25; 181:1]. Carnival did not stop the competition when the participant fell when retrieving a chair. [D.E. 79, 337:4-8].

16. Admitted in part. Denied that the second round only involved retrieval of a ketchup bottle. A participant slipped and fell while retrieving the ketchup bottle. [D.E. 79, 337:10-14; 345:10-25]. Carnival did not stop the competition when the participant fell while retrieving the ketchup bottle. [D.E. 79, 337:10-14; 345:10-25].

17. Denied. The Motion cites to part of the record that does not support this paragraph. Cosmo retrieved a ketchup bottle "[a]round the back side of the stage by the condiments station". [D.E. 79, 198: 3-6]. Additionally See ¶16.

18. Admitted in part. Denied as mischaracterized that Cosmo simply proceeded to the lounge chairs to get a book. See ¶6. Cosmo followed Carnival's instructions to hurry to get back so he would not get disqualified. [D.E. 79, 208: 14-15]. Cosmo chose to go down the aisle of lounge chairs because it was the closest area to where he was in relation to the stage. [D.E. 79, 209: 1-6]. Carnival's competition "Last Man Standing" is a race and Carnival knows participants will do what it takes to win. [D.E. 82, 12:7-13, 25; 13:1; 18:15-16]; [D.E. 88, 52:22-25; 53:1-3].

19. Admitted in part, denied in part. Admitted Cosmo hurried back with the book. Denied as mischaracterizing Cosmo's testimony. See ¶3, 4, and 6.  In the same answer the Motion cites to Cosmo testified that he "was being careful, keeping my eyes in front of me and saw, as I was getting back, a passenger, So I went over the chair and that's when I slipped and fell on a large puddle of water." [D.E. 79, 210:14-18]. Cosmo was following Carnival's instructions. See ¶6.

20. Denied. Cosmo went over the end of the lounge chair at the end of the aisle to avoid crashing into a child and a woman entering the same aisle despite the participants hurrying, rushing, and jumping around the Lido Pool Deck. [D.E. 74, at time stamps 00:55 – 1:10]; [DE 79, 215:15-22]. Cosmo does not independently remember *how* he went over the lounge chair other than to say he recalls going over it. [D.E. 79, 34:1-9; 215:15-25]. Cosmo followed Carnival's competition instructions **to hurry in order not be the last one back and disqualified**. [D.E. 88, 50; 4-16]; [D.E. 79, 174: 5-10, 22-25; 175: 7; 333:18-25; 334:1-3]. "Last Man Standing" is a race that Carnival knows, and the CCTV depicts, participants doing what it takes to win the competition. [D.E. 82, 12:7-13, 25; 13:1; 18:15-16]; [D.E. 88, 52:22-25; 53:1-3]. When Cosmo reached the floor he landed in a five by two-foot puddle of water that blended with Carnival's API floor which caused him to slip and fall. [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 218:2-4; 228:4-10, 17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14];[D.E.92 STILLS OF CCTV].

21. Admitted in part, denied in part.  Admitted Cosmo made an estimation. Denied as the Motion fails to specify either page or line number for "12-20" as to one of its citations and mischaracterizes the testimony. It appears the Motion cherry picks lines from D.E. 79, 216: 4-19. Cosmo clearly states that he does not know the dimensions of the lounge chair he went over, and merely speculates. [D.E. 79, 216:13-15; 340:3-21].

22. Denied. The Motion omits that Cosmo was not looking **down** at the floor as he went over the lounge chair to avoid crashing into the non-participating woman and child. [D.E. 79, 230: 5-8, 12-15; 215:15-22]; [D.E. 74 at time stamps 00:55 – 1:10]. Instead, Cosmo paid attention to where he was going next, directly ahead of him to hurry and get back in time. [D.E. 79, 230: 12-15]. Once over the lounge chair, Cosmo slipped and fell in a five by two-foot puddle of water that blended with the floor that Cosmo could not see. [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 228:17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14].

23. Admitted in part, denied in part.  Denied the CCTV depicts the incident. Admitted [D.E. 74] is a small portion of the CCTV of the incident. Denied Cosmo is running. See ¶6, 20. The CCTV Carnival elected to preserve fails to capture what Carnival did—and did not do--to prepare for the competition, how Carnival recruited participants, the first two rounds of the competition

when participants retrieved a chair, the two participants who fell before Cosmo, and what occurred throughout the remainder of the competition.  D.E. 74 depicts the participants, including Cosmo, hurrying, rushing, and jumping around the Lido Pool Deck. [D.E. 74, at time stamps 00:55 – 1:10]; [DE 79, 215:15-22].  Cosmo followed Carnival's competition instructions **to hurry in order not be the last one back and disqualified**.  [D.E. 88, 50; 4-16]; [D.E. 79, 174: 5-10, 22-25; 175: 7; 333:18-25; 334:1-3].

24. Admitted in part, Denied in part.  Denied Cosmo is 'leaping'. See ¶6, 20.  Cosmo recalls going over the lounge chair, but not the exact details as to how he went over the lounge chair. [D.E. 79, 34:1-9; 215:15-25].  Cosmo's feet cannot be seen in D.E. 74.  [D.E. 74, at 1:07-1:09]. D.E. 74 depicts Cosmo at time stamp 1:07-1:08 immediately slipping and falling caused by the large puddle that blended with Carnival's flooring on the other side of the lounge chair that Cosmo could not see.  [D.E. 74, at 1:07-1:09]; [D.E. 79, 23: 8-9; 31: 17-18; 36:13-16; 37:7-9; 218:2-4; 228:4-10, 17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14].

25. Admitted in part, denied in part.  Denied this timestamp proves Cosmo is airborne. Admitted Cosmo went over the chair. See ¶6, 20, and 24.

26. Admitted in part, denied in part.  Admitted the incident occurs on the other side of the chair. Denied Cosmo landed on the other side of the chair and fell. Cosmo **slipped** and fell on the other side because he slipped in a five by 2-foot puddle that he could not see while participating in a racing competition planned and organized by Carnival on a slippery wet pool deck with physical obstacles and crowded with other passengers.  [D.E. 74], [D.E. 88, 30:12-25; 31:1-6; 50; 4-16]; [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 174: 5-10, 22-25; 175: 7; 218:2-4; 228:4-10, 17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 333:18-25; 334:1-3; 343:11-14]; [D.E.82, 23-24:1-9]. **Carnival knew there would likely be pool water on the Lido Pool Deck during the competition**. See ¶14.

27. Admitted in part, denied in part. Admitted the partial quote is accurate. Denied Cosmo just hit the floor and a puddle was simply there. See ¶26.

28. Admitted in part, denied in part. Admitted the puddle is 5' by 2'. Denied because the Motion cites to pages and lines that do not fully support this paragraph. Denied Cosmo took "seconds" to realize he slipped and fell. Denied he was wet from knees to shoulder. Cosmo was wet for almost five feet along his body from about his calf line to his shoulder. [D.E. 79, 222: 18-19; 332: 15-16]. Cosmo stated that he was primarily wet on the right side of his body. [D.E. 79, 222: 7-8]. Cosmo testified that when he "got up, there was a puddle of water, I was wet.  I got up

and went directly to sit in my chair. I wasn't there to start inspecting anything, but I was all wet."
[D.E. 79, 223:6-9].

29. Admitted in part, denied in part. Admitted as to Cosmo went to his set, talked to the host and returned the book. Denied as to chronology of events and mischaracterized. D.E. 74 depicts Cosmo clutching his right arm in pain as well as other participants hurry and running to secure a seat to avoid disqualification during round three of the competition. [D.E. 74, time stamp 1:08-1:29]. D.E. 74 shows Cosmo giving the book he retrieved to Samar Hmeidan who returns the book to its owner.[D.E. 74, time stamp 1:35-1:46].

30. Admitted in part, denied in part. Denied Cosmo walks in the puddle again. Admitted Cosmo was near the puddle. See ¶29.  Denied as there is no record evidence that Cosmo went over the arm chairs of the lounge chair during the competition.  Denied as there is no record evidence the arm rests are either silver or metal. Denied as inaccurate time stamp of still [D.E. 74, 1:35].

31. Admitted in part, denied in part.  Admitted Cosmo knew the location of the pool.  Denied as to Cosmo's thoughts and thought process during the event. Cosmo relied on Carnival to inspect, clean, and make the racing competition that Carnival planned and organized on its crowded, obstacle filled, slippery when wet Lido Pool deck.  [D.E. 74], [D.E. 88, 30:12-25; 31:1-6; 50; 4-16]; [D.E. 79, 23: 8-9; 25:18-22; 31: 17-18; 37:7-9; 174: 5-10, 22-25; 175: 7; 218:2-4; 228:4-10, 17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 333:18-25; 334:1-3; 343:11-14]; [D.E.82, 23-24:1-9].  Cosmo never saw water where he ultimately slipped and fell.  [D.E. 79, 23: 8-9; 31: 17-18; 36:13-16; 37: 7-9; 228:17-20; 229:15-18; 327:24-25; 328:1-5, 16-24; 342: 8-11, 17-18]

32. Admitted in part, denied in part.  Admitted as to lengd of time and watching his daughter. Denied as the Motion mischaracterizes Cosmo's testimony specifically "to the area" observed. Cosmo testified that during the hour to hour and a half before the competition, he did not see anyone drop a drink or drip water **where he ultimately slipped and fell**. [D.E. 79, 21: 12-18]. **(This is evidence that the water had been on the floor for at least one to 1 ½ hours).** Additionally, Cosmo relied on Carnival to inspect and make the area safe for the competition. [D.E. 79, 19: 8-11; 21:19-21; 25: 18-22; 26: 5-7, 14-18; 28:21-25; 29:1; 331:10-16; 338:17-20].

33. Admitted in part, denied in part.  Admitted in part that Cosmo observed his daughter an passengers get in and out of the pool.  Denied as to Cosmo observations. Cosmo testified that he did make any assumptions to whether there was water on the floor. [D.E. 79, 23: 3-9].  Cosmo testified that he could not observe water on the floor because the Lido Pool Deck floor was shiny and the water blended with the floor.  [D.E. 79, 23: 8-9; 31: 17-18; 37: 7-9; 228:17-20; 229:15-18;

327:24-25; 328:1-5, 16-24; 342: 8-11, 17-18].  Cosmo further explained that when his daughter gets out of the pool, he stands there to dry her off.  [D.E. 79, 23:22-25; 24:1-2].

34. Admitted in part, denied in part. Admitted Cosmo did not speculate. Denied as mischaracterized what Cosmo testimony See ¶33. Cosmo refused to guess because when his daughter gets out of the pool, he stands there to dry her off and she is dry when she gets out from the pool.  [D.E. 79, 23:22-25; 24:1-2].

35. Admitted, but additionally Cosmo relied on Carnival to inspect and make the area safe for the competition it planned and organized. [D.E. 79, 19: 8-11; 21:19-21; 25: 18-22; 26: 5-7, 14-18; 28:21-25; 29:1; 331:10-16; 338:17-20].

36. Admitted in part, denied in part.  Admitted Cosmo could not see if there was any water on Carnival's Lido Pool Deck. Denied that Cosmo *could* see water on the floor because the floor was shiny and the water blended with the floor. [D.E. 79, 23: 8-9; 31: 17-18; 37: 7-9; 228:17-20; 229:15-18; 327:24-25; 328:1-5, 16-24; 342: 8-11, 17-18].

37. Admitted in part, denied in part.  Admitted Cosmo did not see water. Denied Cosmo *could* see water. *See* ¶12, 14, 20, 22, 24, 26, 31-33, 35-36.

38. Admitted in part, denied in part. Admitted the liquid was clear and odorless. Denied as to the characterization of the "liquid". Cosmo testified pool water caused his slip and fall that blended with the shiny wet floor.  [D.E. 79, 23: 8-9; 31: 17-18; 37: 7-9; 225:21-24; 226:5-11; 227:7-12, 17-20; 228:4-10; 17-20; 229:15-18; 327:24-25; 328:1-5, 16-24; 342: 8-11, 17-18].

39. Admitted in part, denied in part. Admitted that there is not an identical fact for fact prior similar incident. Denied there are no substantially similar incidents. Carnival testified that there are at least 29 known substantially similar prior incidents aboard Carnival's "Spirit Class" which include the *Miracle*, the *Legend*, the *Spirit*, and the *Pride* involving passengers slipping and falling on Carnival's unreasonably slippery when wet Lido Pool Deck floors. [D.E. 96]; [D.E. 81, 61:16-25; 62:1-11; 89:17-25; 90:1-6;112:19-25; 113:1-14].

## ADDITIONAL FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

40. Carnival knows it is more likely than not there was water on the *Miracle* Lido Deck Pool floor during Last Man Standing. Carnival's own crewmember Terrance Phillips testified that "sometimes there are activities that deal with water prior to the Last Man Standing when we're hosting it.  **So we know that there could be water on the floor for *any* activity we do.  If you're asking me if it has to be clean and dry before we can perform the activity?  No, it doesn't have to be clean and dry because chances are it won't be**." [D.E. 82, 47:18-25; 48:1]. Additionally, Terrance Phillips testified that he "thinks its safe to say that there could have been

water, as there's a pool.  Now there could have been footprints.  But to say that there was a large – its hard because there's a floor and there's a pool.  So of course there's going to be water." [D.E. 82, 89:18-24].

41. Terrance Phillips testified during his deposition that Plaintiff's Exhibit 5, a still of the CCTV from [D.E. 74] shows water on the Lido Pool deck floor on the date of the incident.  [D.E. 82, 106:1-9; attached Exhibit 5].  Similarly, Carnival admitted that in a still of the CCTV from [D.E. 74] shows water on the Lido Pool deck floor on the date of the incident where Carnival hosted "Last Man Standing". [D.E. 88, 80:25; 81:1-3; Plaintiff's Exhibit 4].

42. Carnival's own security officer, Juanito Catubig, and the supervisor of pool and decks, Edin Hadzic, inspected the location of Cosmo's fall and "noticed the area was slightly wet due to **continuous transit of guests entering/exiting the main pool**, with no apparent safety concern." [D.E. 82, 92: 6-25; Exhibit 4].

43. Carnival's crewmember, Terrance Phillips, has hosted "Last Man Standing" at least 15 times on 15 different Carnival ships.  [D.E. 82, 8:21-25; 9:1-7].

44. Carnival knows it has a repetitive condition on the *Miracle*'s Lido Pool Deck of passengers getting in and out of the pool and causing water to drip and accumulate throughout the day.  [D.E. 88, 28:18-25]; [D.E. 82, 78:17-25; 79:1-5; 104:13-25; 105:1-7].

45. Carnival knows that the *Miracle*'s Lido Pool Deck can be slippery when walking, running, or jumping. [D.E. 82, 48:4-9, 23-25; 49:2, 14-18; 50:2-15,22-25; 51:2; 52:7-13]; [D.E. 88, 58:24-25; 59:1-22; 60:2-13].

46. Carnival knows to expect that participants of "Last Man Standing" may rush, run or jump during the competition and may slip and fall.  [D.E. 82, 43:9-14].  Despite knowing this, Terrance Phillips does not warn participants that they may slip and fall if they run and jump during "Last Man Standing" as its "not party of my spiel that you may slip and fall if you run.  But common sense is, if you run and jump there's a possibility that you may slip and fall. Yes." [D.E. 43: 14-19].

47. Carnival trains its crewmembers who host events, including "Last Man Standing" in two parts: 1) the activity itself and how to make it fun and 2) **risk assessments**.  [D.E. 82, 67:25; 68:1-8].  Carnival provides "a list of papers that are called Risk Assessments and they're – they're scored one through five on how risky an activity may be and **what to prevent**." [D.E. 82, 8-12]. Terrance Phillips testified that these reports list potential hazards, which for "Last Man Standing" include water on the Lido pool deck, obstacles such as lounge chairs, chairs, and passenger belongings as well as other hazards he could not remember.  [D.E. 82, 70-73: 1-25].  The purpose

of Carnival's risk assessments is so the host pays attention and is aware of hazards in the area in which he, the Carnival MC, is in control of such as passengers dripping water or spilling drinks on the Lido pool deck.  [D.E. 82, 74:17-23; 76:4-8].

48. Carnival admits that it should inspect the Lido Pool Deck before it starts to host "Last Man Standing" to ensure that the Lido Pool Deck is dry.  [D.E. 82, 102:19-24; 103:1]; [D.E. 88, 29:4-8; 31:13-17].  Carnival knows that water accumulations are a known hazard of the Lido Pool Deck.  [D.E. 88, 35:16-20].  Carnival therefore knows it is important for its hosts to inspect the Lido Pool Deck *prior* to hosting events such as "Last Man Standing" because if pool water accumulates or spills are not dried, then participants can slip and fall.  [D.E. 82, 103:11-17; 104:13-25; 105:1-7];[D.E. 88, 36:13-20].

49. Carnival crewmember, Terrance Phillips, knows that at a minimum he received risk assessment reports for hosting Carnival events since at least February 2015. [D.E. 82, 121:24-25; 122:1-3]

50. Carnival crewmember, Terrance Phillips, testified that he **knows** to anticipate that participants of "Last Man Standing" will run, rush or jump during the game because of the nature of the game as well as the fact he has hosted the competition at least 15 times during which contestants have run, rushed, or jumped.  [D.E. 82, 8:21-25; 9:1-7; 110: 13-22; 111:24-25; 112:1-10, 17-24; 127:5-21; 129:1-4].

51. One of the 28 substantially similar prior incidents included Kathryn Breeden who slipped and fell when running on the *Miracle*'s wet Lido Pool Deck to collect an item during "Last Man Standing".  [D.E. 81, 39:1-15].  Ms. Breeden's incident occurred on May 24, 2015, approximately three months before Cosmo's incident.  [D.E. 1, ¶7-8]; [D.E. 81, 38:17-25].

52. Carnival held a meeting regarding Ms. Breeden's incident in order to discuss "**the frequency of accidents happening on the lido deck due to the wet surface**". [D.E. 81, 36:11-25; 37:1-8; Plaintiff's Exhibit 3 at Bate Stamp 63].  During this meeting Carnival discussed the "need to remind the team to ensure that the area is kept dry at all times" and "**keeping a close eye on accidents that are occurring during the activities organized by the ship**". [D.E. 81, 36:11-25; 37:1-8; Plaintiff's Exhibit 3 at Bate Stamp 63].

53. Brian Avery, an expert in event planning and attractions safety, concluded that Carnival failed to meet industry standards and practices when planning, organizing, developing, supervising and hosting "Last Man Standing" and subjected Cosmo to hazardous conditions which caused him to slip and fall and sustain an injury.  [D.E. 89, ¶1-19].  Carnival should have chosen a venue without water, without people and other physical obstacles; inspected the venue for hazards;

provided verbal and written information participants; enforced the rules of the event; repeated the rules of the event; and stopping the event when it was clear participants were endangered by the competition.  [D.E. 89, ¶18].

### III.     LEGAL STANDARD.

54. In making its assessment of summary judgment, the court must view all of the evidence and all factual inferences reasonably drawn from the evidence from a light most favorable to the non-moving party, *Stewart v. Happy Hermans Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997) and must resolve all reasonable doubts about the facts in favor of the non-movant. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America,* 894 F.2d 1555, 1558 (11th C3ir. 1990). *See generally Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*).

55. An issue of fact is material if it is a legal element of the claim under the applicable substantive

law which might affect the outcome of the case.  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Channa Imps., Inc. v. Hybur, Ltd.,* No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. 2008).

### IV.     CARNIVAL IS NOT ENTITLED TO SUMMARY JUDGMENT.

56. Carnival's Motion for Summary Judgment should be denied because: (1) Even with express assumption of risk in a sporting event, the organizer/premises owner is responsible for hazards on the premises; (2) Carnival created the event and the hazardous condition and negligently maintained the deck and therefore the Plaintiff is not required to show notice (even though there is evidence of notice here);   (3) Notice also is not required because Carnival negligently maintained the Lido Deck and because Carnival knew that this hazardous condition of water on the deck was a repetitive condition; (4) the water itself on this shiny resin deck was not open and obvious and the unreasonable slipperiness of the water on this deck was not open and obvious; (5) Carnival had actual and constructive notice of the dangerous condition; and (6) Carnival negligently planned and organized the event "Last Man Standing".

57. **The organizer/premises owner is responsible for hazards on the premises even where the plaintiff participates in a sporting event**. *Ashcroft v. Calder Race Couse, Inc*., 492 So.2d 1309 (Fla. 1986). The Defendant relies on *Vollman v. Royal Caribbean Cruises Ltd.*, 2011 WL 106363189 (S.D. Fla. Mar. 16, 2011) a District Court case decided by former Magistrate Brown involving a Plaintiff who went over a guardrail during a group scavenger hunt. *Vollman* is

fundamentally different from this case.  In *Vollman*, there was no hidden danger as there is here.  Here, there was a puddle which could not be seen and which made this floor unreasonably slippery.

58. Here, the cruise line negligently maintained the premises by failing to inspect for and dry up any water on the deck before hosting the "Last Man Standing" competition.  That water was in several areas as seen by the other slip and falls that day.  And the water in which Mr. Cosmo fell was a large five by two-foot puddle of accumulated water, but which was not readily visible to someone in a standing position (as opposed to inspecting at floor level or inspecting by slowly moving a towel or squeegee along the floor as the cruise line should have done before the competition began).

59. In the second *Vollman* order of Magistrate Brown, not cited by the Defendant, *Vollman v. Royal Caribbean Cruises Ltd.*, 2011 WL 10636190 (S.D.Fla. May 6, 2011), the Court there cited to and recognized the law announced by The Florida Supreme Court in *Ashcroft v. Calder Race Couse, Inc*., 492 So.2d 1309 (Fla. 1986).  In *Ashcroft*, a jockey riding a horse in a race "was injured when his horse veered across the race course and toward an exit gap. He lost control, fell to the ground, and was run over by another horse, rendering him a quadriplegic. [The jockey] sued respondent Calder Race Course, Inc. for damages, alleging that Calder's negligent placement of the exit gap caused the accident and his resultant injury".  *Ashcroft*, 492 So. 2d at 1410.

60. The Court in *Ashcroft* analyzes comparative negligence v. the rejected doctrine of implied assumption of risk and the doctrine of express assumption of the risk, the doctrine which is urged here by the Defendant.  In *Ashcroft*, the Court cites to Prosser and to the Second Restatement of Torts and says that even where there is an express assumption of the risk, the plaintiff does not assume the risk of hidden dangers.  In *Ashcroft*, the danger for the jockey was the exit gap on the track.  The Court in *Ashcroft* held that the verdict for the Plaintiff jockey should be reinstated and cite the Restatement (Second) of Torts § 343A (1965): "Known or Obvious Dangers (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness". Id.* (emphasis supplied).

61. The Court in *Ashcroft* after its analysis of the Restatement provisions and Prosser concluded:

> A landowner who assumes the task of providing the physical facility upon which a sport is to be played has a duty to exercise reasonable care to prevent foreseeable injury to participants that includes foreseeing that they may risk a known danger in

order to participate.  **If injury occurs due to negligent maintenance of the facility, the landowner may be held liable**.

*Ashcroft*, 492 So. 2d at 1411 – 1412.

62. Therefore, when as here the operator of the premises, here Carnival, negligently maintains the premises which in this case was a hidden danger, or where as here there is a repetitive condition of which the operator of the premises knew, the Defendant cannot escape liability by arguing that the plaintiff entered into the "competition".  The Defendant's negligent maintenance and failure to inspect and clean up these puddles caused the fall.  The Plaintiff did not see or appreciate that the floor was wet let alone that the floor was unreasonably slippery.  See, e.g., *Frasca v. Royal Caribbean Cruises, Ltd.,* 2016 WL 3553217, 654 F. Appx. 949 (11th Cir. June 30, 2016).   The water on this shiny resin deck is a hidden danger as the exit gap was in *Ashcroft*.  This danger is why this case is fundamentally distinguished from *Vollman* and the other cases relied on by the Defendant.

63. **Notice is not required to be shown where the owner or operator created the hazardous condition.** *Long v. Celebrity Cruises, Inc*., 982 F. Supp. 2d 1313 (S. D. Fla. 2013)(improperly repaired light fixture under a step), *Caldwell v. Carnival Corp*., 944 F. Sup. 2d 1219, 1223-24 (S. D. Fla. 2013)(selection by the cruise line of tile which was unreasonably slippery when wet for an outdoor area for its passengers to walk from the ship to the cruise line operated concessions on cruise line owned property), *McLean v. Carnival Corp*., 2013 WL 1024257, at 4-5 (S. D. Fla. March 14, 2013), *Groves v. Royal Caribbean Cruises, Ltd*., Case No. 09-20800 CV Torres, D.E. 95 at 3, 4 (S. D. Fla. Dec. 8, 2010), *Baker v. Carnival Corp*., 2006 WL 3519093, at 3 (S. D. Fla. Dec. 6, 2006), *Rockey v. Royal Caribbean Cruises, Ltd*., 2001 WL 420993, at 3 (S.D. Fla. Feb. 20, 2001), *McDonough v. Celebrity Cruises, Inc*., 64 F. Supp. 2d 259, 264 (S.D. N.Y. Aug. 26, 1999).

64. **Carnival planned and organized the racing game "last man standing"**.  Carnival planned and organized the event well in advance. [D.E. 79, 25:18-22; 28:21-25; 159:13-21; 171:21-24; 338: 17-20]; [DE 90 ¶3]; [D.E. 88, 12: 11-19]; [D.E. 82, 64: 21-25]. Carnival advertised the event it its "Fun Times" printed for passengers for the day of the incident, August 4, 2015. [D.E. 84, 31-10-25; 32; Exhibit 2]; [D.E. 82, 62:23-25; 63; 64-1-3].  Carnival crewmember, Terrance Phillips, testified that he has hosted "Last Man Standing" at least 15 different times on 15 different Carnival ships on the Lido Pool Deck.  [D.E. 82, 8:21-25; 9:1-7].  Carnival chose to host the competition on the Lido Pool Deck. Carnival instructed the participants, including Cosmo, to compete against each other to find named items, to be careful, and to hurry back to secure a chair at the front of the stage to avoid disqualification.  [D.E. 82, 10: 7-16; 17: 1-4, 14-19]; [D.E. 79, 206:7-14].  Carnival made the event a race because disqualification was contingent on beating

the other participants back to the stage. [D.E. 82, 9: 15-19]; [D.E. 90 ¶5]. Carnival created an event where passengers would do whatever it takes to beat each other to win the competition.  [D.E. 82, 12:7-13, 25; 13:1; 18:15-16]; [D.E. 88, 52:22-25; 53:1-3]. Knowing this, Carnival chose to host a racing competition next a pool on a pool deck floor that suffers repetitive water accumulation. D.E. 88, 28:18-25]; [D.E. 82, 78:17-25; 79:1-5; 104:13-25; 105:1-7].

65. **Carnival chose to host a competition on an a slippery wet floor**.  Carnival and crewmember Terrance Phillips testified that they knew that the Lido Deck floor is repetitively wet. D.E. 88, 28:18-25]; [D.E. 82, 78:17-25; 79:1-5; 104:13-25; 105:1-7].  Carnival and crewmember Terrance Phillips also testified that they knew that the Lido Deck floor suffers from water accumulation that can be slippery.  They also testified that they knew that the Lido Pool Deck can be slippery when wet when walking, running, or jumping.  [D.E. 82, 48:4-9, 23-25; 49:2, 14-18; 50:2-15,22-25; 51:2; 52:7-13]; [D.E. 88, 58:24-25; 59:1-22; 60:2-13].  Therefore, Carnival knew that it should keep the floor clean and dry when hosting "Last Man Standing" on the Lido Pool Deck.  Nevertheless, Carnival chose to host "Last Man Standing" on a wet pool deck.  Game host, Terrance Phillips admitted on August 4, 2015 "**it's safe to say there could have been water, as there's a pool**."  [D.E. 82, 89:13-20].  Additionally, "there's a floor and there's a pool.  So **of course there's going to be water**" on the Lido Pool Deck floor.  [D.E. 82, 89:22-24].

66. **Negligent maintenance; No notice is required to be shown.**  Negligent maintenance is a viable theory of breach and proximate causation in a maritime negligence suit.  *Holderbaum v. Carnival Corporation*, 87 F. Supp. 3d 1345, 1358 (S.D. Fla. Feb. 19, 2015); *Frasca v. NCL (BAHAMAS), Ltd.*, 654 Fed. Appx. 949 (11th Cir. 2016), and *Mabrey v. Carnival Cruise Line*, 438 So. 2d 937) (Fla. 3d DCA 1983).  Because in a negligent maintenance action it is the actions, or inaction, of the Defendant which creates the condition or allows the condition to occur, the plaintiff is not required to show that the defendant had notice of the condition.

67. Here, the evidence of the negligent maintenance is that the water was on the deck for 1 to 1 ½ hours before the fall (and the fact that the water on this deck was a repetitive condition of which Carnival had knowledge). Cosmo repeatedly testified that he was sitting in the direction of where he ultimately fell for an hour to an hour and a half watching his daughter in the pool. At no point did he ever see anyone drop a drink or drip water over where he later fell.  During the competition he never saw anyone drop a drink or drip water where he later fell.  And at no time did he see the five by two-foot puddle of water which caused him to fall.  The water blended in with the shiny pool deck floor. [D.E. 79, 19: 8-11; 21:19-21; 23: 8-9; 25: 18-22; 26: 5-7, 14-18; 28:21-25; 29:1; 31: 17-18; 37: 7-9; 228:17-20; 229:15-18; 327:24-25; 328:1-5, 16-24; 331:10-16;

338:17-20; 342: 8-11, 17-18].  Carnival very clearly failed to maintain a clean and dry the pool deck even though it knew that this was a repetitive situation there.

68. This is circumstantial evidence of the amount of time which the puddle was on the floor before the fall.  The Defendant calls this speculative inference. It is evidence from which the trier of fact can draw conclusions.  Carnival knew water accumulations were a repetitive problem on its Lido Pool Decks and failed to inspect for the puddle causing Cosmo's fall.

69. **Repetitive condition; No notice is required to be shown.**  If there is evidence, as here, of a repetitive condition on the premises, the plaintiff is not required to show that the Defendant had notice of the hazard.  See, e.g., *Merridith v. Carnival Corporation,* 49 F. Supp. 3d 1090 (S. D. Fla. 2014) ("frequent condensation build up near the area at issue") and *Mabrey v. Carnival Cruise Lines, Inc*., 438 So. 2d 937 (Fla. 3d DCA 1983)("constant wetness on the deck" caused by sea spray or condensation caused by steam from the nearby smokestack). See also, *Owens v. Publix Supermarkets, Inc*., 802 So. 2d 315 (Fla. 2001), *DiMare & Drews Inc. v. Kerrigan*, 810 So. 2d 1066 (Fla. 4th DCA 2002), *Publix Supermarkets v. Sanchez*, 700 So. 2d 405 (Fla. 3d DCA 1997). See also, *Mabrey v. Carnival Cruise Lines, Inc*., 438 So. 2d 937 (Fla. 3d DCA 1983)("constant wetness on the deck" caused by sea spray or condensation caused by steam from the nearby smokestack).

70. Carnival knows it has a repetitive condition on the *Miracle*'s Lido Pool Deck of passengers getting in and out of the pool and causing water to drip and accumulate throughout the day.  [D.E. 88, 28:18-25]; [D.E. 82, 78:17-25; 79:1-5; 104:13-25; 105:1-7].  Carnival admitted in deposition that it should inspect the Lido Pool Deck before it starts to host "Last Man Standing" to ensure that the Lido Pool Deck is dry.  [D.E. 82, 102:19-24; 103:1]; [D.E. 88, 29:4-8; 31:13-17].  Carnival testified that water accumulations are a known hazard of the Lido Pool Deck.  [D.E. 88, 35:16-20].  Carnival therefore knows it is important for its hosts to inspect the Lido Pool Deck *prior* to hosting events such as "Last Man Standing" because if pool water accumulates or spills are not dried, then participants can slip and fall.  [D.E. 82, 103:11-17; 104:13-25; 105:1-7];[D.E. 88, 36:13-20].

71. Cosmo slipped and fell and was wet for almost five feet along his body from about his calf line to his shoulder.  [D.E. 79, 222: 18-19; 332: 15-16].  Cosmo stated that he was primarily wet on the right side of his body.  [D.E. 79, 222: 7-8].  Cosmo testified that when he "got up, there was a puddle of water, I was wet.  I got up and went directly to sit in my chair.  I wasn't there to start inspecting anything, but I was all wet." [D.E. 79, 223:6-9].

72. **Open and obvious; It is the dangerousness that must be open and obvious, not the**

**condition itself.** When analyzing whether a dangerous condition was open and obvious, the question is whether the *dangerousness* of the condition was open and obvious on the basis of an objective view. *Frasca v. NCL (Bahamas), LTD.*, 654 Fed.Appx. 949, 952 (11th Cir. 2016). In *Merideth v. Carnival Corporation*, 49 F.Supp. 3d 1090 (S.D. Fla. 2014), the district court denied Carnival's motion for summary judgment finding that the floor's **slipperiness** may not have been open and obvious to the plaintiff. In *Frasca* and *Merideth*, the plaintiffs saw water on the floor before they fell. Cosmo did not know the unreasonably slippery nature of the wet deck let alone that the water was there in the first place. The water was hidden by the shininess of the resin deck and on that basis alone the water was not open and obvious. [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 228:17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14]. Just as in Frasca, the deck here tested significantly below the coefficient of friction standards. Will Martin, safety expert and licensed architect, tested the Carnival Miracle Lido deck on March 4, 2017. He found that the deck was resin and found the floor inconsistent in texture causing inconsistent slip resistance test results after measuring the slip floor's slip resistance with a base model English XL (VIT). [D.E. 91¶9-10]. Martin concluded that all of the readings though were below industry safety standards. [D.E. 91¶11-12]. ASTM International, an organization composed of engineers, industry representatives, and others from around the world which creates recognized and peer reviewed standards, publishes F1166 Standard Practice for Human Engineering Design for Marine Systems, Equipment, and Facilities which requires "[w]alkways, passageways, **decks** and all other walking surfaces shall have a nonskid surface sufficient to provide a **coefficient of friction (COF) of 0.6 or higher** measured when the surface is wet. [D.E. 91¶37]. Additionally, Carnival's own internal safety requirements for guest common area flooring materials require the same .6 lowest level of friction. [D.E. 91 ¶39]. Carnival's API Syntheteak flooring on the Lido deck fails to meet both Carnival's internal safety standards when wet as well as the minimum standards required by published safety standards for marine environments. [D.E. 91¶9-12, 24-42, 66]. Therefore, the slipperiness of the floor was also not open and obvious "to an individual utilizing his normal faculties." *Merideth*, 49 F.Supp. 3d at 1095. See also, *Belik v. Carlson Travel Group., Inc.*, 864 F.Supp.2d 1302, 1308 (S.D. Fla. 2011) (Defendant's motion for summary judgement denied where the court held that the depth of water into which the plaintiff dove off of a seawall was not open and obvious). *Belik*, 864 F.Supp.2d at 1308-09.

73. Carnival also had a duty to inspect for these hazards and it failed to do so. See, e.g., *Ribitzki v. Canmar Reading & Bates*, 111 F.3d 658, 663 (9th Cir. 1997). Therefore, Carnival had a known

duty to inspect and find the hazardous condition of water accumulations on its Lido Pool Deck floors.

74. **Evidence of notice to Carnival; 29 prior similar incidents**. There are 29 substantially similar incidents of Carnival passengers slipping and falling on the Lido Pool Deck due to wet substances, most commonly pool water tracked by passengers getting in and out of the Lido Deck Pool.  After one of the Carnival held a meeting to discuss safety issues involving pool water causing slip and falls, particularly during Carnival hosted events such as "Last Man Standing". Carnival knows slip and falls on the Lido Pool Deck are a common enough occurrence that it creates risk assessment reports so hosts like Terrance Phillips are aware of hazards to passengers which includes water on the floor from the pool.

75. "Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care and causation." *Sofillas v. Carnival Corporation*, 2016 WL 5416110 at *2 (S.D. Fla. July 8, 2016. See also, *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583966, at 2 (S.D. Fla. Aug. 16, 2013).  **The similarity standard is relaxed when prior incidents are used to show notice.**  *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 686 (S.D. Fla. 2016(citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009).

76. The most important prior incident involves former Carnival passenger Kathryn Breeden who slipped and fell during "Last Man Standing" when running on the *Miracle*'s wet Lido Pool Deck. [D.E. 81, 39:1-15].  Ms. Breeden's incident occurred on May 24, 2015, approximately three months prior to Cosmo's incident.  [D.E. 1, ¶7-8]; [D.E. 81, 38:17-25].  Carnival held a meeting regarding Ms. Breeden's incident to discuss "**the frequency of accidents happening on the lido deck due to the wet surface**". [D.E. 81, 36:11-25; 37:1-8; Plaintiff's Exhibit 3 at Bate Stamp 63]. During this meeting Carnival discussed the "need to remind the team to ensure that the area is kept dry at all times" and "**keeping a close eye on accidents that are occurring during the activities organized by the ship**". [D.E. 81, 36:11-25; 37:1-8; Plaintiff's Exhibit 3 at Bate Stamp 63]. Carnival knew to keep "a close eye" on events on the Lido Pool Deck because frequency of slip and falls caused its unreasonably and repetitively wet pool deck.  This is clearly evidence by the other 27 documented substantially similar slip and falls throughout the "Spirit Class" including the *Miracle*. [D.E. 96]; [D.E. 81, 61:16-25; 62:1-11; 89:17-25; 90:1-6;112:19-25; 113:1-14].

77. **Evidence of notice to Carnival; Size and length of time which the water was on the deck.** The size and length of time a hazard is left on the floor by the defendant can be circumstantial

evidence of notice. Florida courts have found that evidence that the foreign substance is on the floor for 15-20 minutes to be sufficient notice. See, e.g., *Thomas v. NCL (Bahamas), Ltd.*, 203 F.Supp.3d 1189, 1193 (S.D. Fla. 2016)(citing *Hill v. Ross Dress for Less, Inc.*, 2013 WL 6190435, at *4(S.D. Fla. Nov. 26, 2014); *Erickson v. Carnival Cruise Lines*, 649 So.2d 942 (Fla. 3rd DCA 1995)(reversed summary judgment granted in favor of Carnival Cruise lines where the Plaintiff slipped and fell in a clear puddle of water approximately 3-5 feet in diameter); *Grayson v. Carnival Cruise Lines*, 576 So.2d 417 (Fla. 3rd DCA 1991)(Plaintiff stepped froma stair directly into a puddle 1-2 inches deep and approximately 6'x12' in diameter causing him to slip and fall).

78. Cosmo testified that the puddle must have been on the floor for at least an hour to an hour and a half before he fell. He testified that for the 1 to 1 ½ hours that he was sitting in the area he was looking in the direction of where he ultimately fell. [D.E. 79, 23: 8-9; 31: 17-18; 37:7-9; 218:2-4; 228:4-10, 17-20; 229:15-18; 332:4-21; 342: 8-11, 17-18; 343:11-14]. And he saw no one in that area where eventually he fell drip water or drop a drink. [D.E. 79, 21: 12-18].

79. **Evidence of notice to Carnival; Carnival's risk assessment reports.** Carnival trains its crewmembers who host events, including "Last Man Standing" in two parts: 1) the activity itself and how to make it fun and 2) **risk assessments**. [D.E. 82, 67:25; 68:1-8]. Carnival provides "a list of papers that are called Risk Assessments and they're – they're scored one through five on how risky an activity may be and **what to prevent**." [D.E. 82, 8-12]. Terrance Phillips testified that these reports list potential hazards, which for "Last Man Standing" include water on the Lido pool deck, obstacles such as lounge chairs, chairs, and passenger belongings as well as other hazards he could not remember. [D.E. 82, 70-73: 1-25]. The purpose of Carnival's risk assessments is so the host pays attention and is aware to hazards in the area they are in control of such as passengers dripping water or spilling drinks on the Lido pool deck. [D.E. 82, 74:17-23; 76:4-8].

80. Carnival crewmember, Terrance Phillips, testified that he knows to anticipate that participants of "Last Man Standing" will run, rush or jump during the game because of the nature of the game as well as the fact he has hosted the competition at least 15 times during which contestants have run, rushed, or jumped. [D.E. 82, 8:21-25; 9:1-7; 110: 13-22; 111:24-25; 112:1-10, 17-24; 127:5-21; 129:1-4].

81. Carnival admits that it should inspect the Lido Pool Deck before it starts to host "Last Man Standing" to ensure that the Lido Pool Deck is dry. [D.E. 82, 102:19-24; 103:1]; [D.E. 88, 29:4-8; 31:13-17]. Carnival knows that water accumulations are a known hazard of the Lido Pool Deck. [D.E. 88, 35:16-20]. Carnival therefore knows it is important for its hosts to inspect the Lido Pool

Deck *prior* to hosting events such as "Last Man Standing" because if pool water accumulates or spills are not dried, then participants can slip and fall.  [D.E. 82, 103:11-17; 104:13-25; 105:1-7];[D.E. 88, 36:13-20].

82. **Carnival negligently planned the event**. Carnival announced and organized this event on its ship.  The law recognizes a cause of action for negligent event planning.  *Belik v. Carlson Travel Group, Inc.*, 864 F.Sup.2d 1302 (S.D. Fla. 2011).  In *Feinswog v. Holland America Line West Tours, Inc.,*636 So.2d 98 (Fla. 3d DCA 1994), the court held that the operator of a walking tour of a state park who provided a tour guide owed members of the tour group the duty to operate the tour in a reasonably safe manner.  Thus, it reversed a summary judgment.  Likewise, here, Carnival admittedly owed Cosmo the duty to operate the "Last Man Standing" event in a reasonably safe manner.

83. Similarly, in *Kaufman v. A1 Bus Lines, Inc.,* 416 So.2d 863 (Fla. 3d DCA 1981), the court reversed a summary judgment and held that a jury question was presented as to whether the bus company served in a capacity beyond that of furnishing transportation to a museum and acted as a tour guide so as to make itself liable for any negligence which may have resulted in the injury sustained by the plaintiff when she fell from a catwalk while part of a tour group visiting the museum. This decision cited to *Restatement of Torts* '323 and 324a, which address voluntary undertakings. The court held:

> First, whether A-1 Bus Lines assumed a duty commensurate with its undertaking to act as tour guide presents a jury question.  If the jury finds that A-1 served in a capacity beyond that of furnishing transportation and acted as a tour guide, liability for negligence may result.  An action undertaken for the benefit of another must be performed in accordance with a duty to exercise due care.

416 So.2d at 864.  Likewise, here, whether Carnival assumed a duty commensurate with its undertaking to act as an event creator, planner, and host, presents a jury question.  If the jury finds that Carnival served in a capacity beyond that of furnishing games to play, but acted as the host who planned, organized, and lead the competition, Carnival may be held liable.

84. The duty element of negligence focuses on whether the defendant's conduct foreseeably created a zone of risk that poses a general threat of harm to others.  *Goldberg v. Florida Power & Light Co.,* 899 So.2d 1105, 1110 (Fla. 2005) (citing *McCain v. Florida Power Corp*., 593 So.2d 500, 502 (Fla. 1992)).  The Florida Supreme Court described the sources from which a duty may arise:

> A duty may arise from multiple sources: "(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or

regulations; (3) other judicial precedents; and (4) a duty arising from the general facts of the case."

*Id*. (quoting *Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 85 (Fla. 2003)).  *See also Zivojinovich v. Barner*, 525 F.3d 1059 (11ᵗʰ Cir. 2008).

85. Carnival's conduct of planning, organizing, and hosting a racing competition in a crowded area with obstacles including an unreasonably and repetitively wet pool deck created a "zone of risk" that put the participants, including Cosmo, in danger of slipping and falling.  [D.E. 79, 25:18-22; 28:21-25; 159:13-21; 171:21-24; 338: 17-20]; [D.E.82, 23-24:1-9]; [D.E. 88, 30:12-25; 31:1-6; 53:4-25; 54:1-14].  Additionally, Carnival's own host knew to anticipate that participants would run, rush, or jump during the competition due to his experience of hosting "Last Man Standing" at least 15 times prior to Cosmo's fall.  [D.E. 82, 8:21-25; 9:1-7; 110: 13-22; 111:24-25; 112:1-10, 17-24; 127:5-21; 129:1-4]. Carnival was so aware of the risks created in the zone, the Lido Pool Deck, that it generated risk assessment reports to make Carnival crewmembers aware of potential and known hazards such as water accumulations on the pool deck.  [D.E. 82, 48:4-9, 23-25; 49:2, 14-18; 50:2-15,22-25; 51:2; 52:7-13; 78:17-25; 79:1-5; 104:13-25; 105:1-7]; [D.E. 88, 28:18-25; 58:24-25; 59:1-22; 60:2-13].

86. Brian Avery, an expert in event planning and attractions safety, concluded that Carnival failed to meet industry standards and practices when planning, organizing, developing, supervising and hosting "Last Man Standing" and subjected Cosmo to hazardous conditions which caused him to slip and fall and sustain an injury.  [D.E. 89¶1-19].  Carnival should have chosen a venue without water, people, and physical obstacles; inspected the venue for hazards; provided verbal and written information participants; enforced the rules of the event; repeated the rules of the event; and stopping the event when it was clear participants were endangered by the competition.  [D.E. 89 ¶18].

87. Carnival chose to violate industry standards by selecting to host a competition on an unreasonably slippery when wet pool deck with hidden boobytraps of pool water accumulations that blend in with its shiny floors.  Carnival could have elected to host the event in another area of the *Miracle* where it could control the number of passengers, physical obstacles, away from a pool to avoid hidden slippery puddles.

88. **Conclusion.**  The Motion for summary judgment should be denied.

### REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.1(b)(2)

The Plaintiff requests oral argument on the Defendant's motion for summary judgment in order to fully explore and explain the legal and factual issues including whatever arises in the Reply to which we will not be able to respond.  This will afford the Court a meaningful and a complete account of the matters for which this Court must decide.  The Plaintiff requests a 1 hour hearing.

WHEREFORE, the Plaintiff respectfully requests this Court DENY the Defendant's Motion for Summary Judgment, and for any other relief this Court deems just and proper.


Respectfully submitted,

*s/ Sarah A. Lobel*
John H. Hickey, Esq. (FBN 305081)
hickey@hickeylawfirm.com
Sarah A. Lobel, Esq. (FBN 88716)
slobel@hickeylawfirm.com
**Hickey Law Firm, P.A.**
1401 Brickell Avenue, Suite 510
Miami, FL  33131
Phone: (305) 371-8000
Fax: (305) 371-3542
*Attorneys for the Plaintiff*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2017 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.


*s/ Sarah A. Lobel*
Sarah A. Lobel, Esq. (FBN 88716)

**WAYNE COSMO V. CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINE, INC**.

CASE NO: 16-CV-22933-SCOLA/OTAZO-REYES

| | |
|---|---|
| **John H. (Jack) Hickey, Esq**.<br>hickey@hickeylawfirm.com<br>federalcourtfilings@hickeylawfirm.com<br>**Sarah Lobel, Esq.**<br>slobel@hickeylawfirm.com<br>imarino@hickeylawfirm.com<br>**HICKEY LAW FIRM, P.A.**<br>1401 Brickell Avenue, Suite 510<br>Miami, FL  33131<br>Tel: 305-371-8000/Fax: 305-371-3542<br>*Attorneys for Plaintiff* | **Jeffrey E. Foreman, Esq**.<br>jforeman@fflegal.com<br>mfonticiella@fflegal.com<br>oricardo@fflegal.com<br>sespino@fflegal.com<br>**Darren W. Friedman, Esq.**<br>dfriedman@fflegal.com<br>sargy@fflegal.com<br>**Rachael Mitchell Fagenson, Esq.**<br>rmitchel@fflegal.com<br>**Jenna Gushue, Esq.**<br>jgushue@fflegal.com<br>sargy@fflegal.com<br>**FOREMAN FRIEDMAN, P.A.**<br>One Biscayne Tower – Suite #2300<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Tel: 305-358-6555/ Fax: 305-374-9077<br>*Counsel for Defendant* |