United States District Court
for the
Southern District of Florida

| Wayne Cosmo, Plaintiff, | ) |
| :-- | :-- |
| | ) |
| v. | ) Civil Action No. 16-22933-Civ-Scola |
| | ) |
| Carnival Corporation dba Carnival | ) |
| Cruise Line, Defendant. | ) |

## Order Denying Defendant's Motion for Summary Judgment

Plaintiff Wayne Cosmo was a passenger aboard Defendant Carnival Corporation's *Miracle* in August 2015 when he fell on his right wrist during an organized game, near a pool, where he alleges the floor was wet and slippery. According to Cosmo, he has suffered permanent damage as a result of fractures to his radius and ulna as well as depression, anxiety, and an exacerbation of his pre-existing ulcerative colitis. In its motion for summary judgment, Carnival submits that it should not be responsible for Cosmo's damages because (1) Cosmo's jumping over a lounge chair on a wet deck was the proximate cause of his own injuries; (2) Cosmo has not offered sufficient evidence that Carnival had either actual or constructive notice of the alleged dangerous condition; and (3) even if Carnival did have notice, the nature of the danger was open and obvious, thus obviating the need for Carnival to warn Cosmo of the danger. Because there is sufficient evidence upon which a reasonable fact finder could decide this case in Cosmo's favor, at least in part, the Court **denies** Carnival's motion for final summary judgment (**ECF No. 76**).

1. **Background**

While aboard Carnival's ship *Miracle*, Cosmo elected to participate in a cruise-organized game called "Last Man Standing." The game is best described as a combination of a scavenger hunt and musical chairs. An emcee directs a number of participants—volunteer cruise-ship passengers—to retrieve items from around the lido deck, near the pool where the game is played, and to then return to the stage where the participants have assembled a row of chairs. Each time the players leave the stage area, a chair is removed. The last player in each round to return to the stage with the new item will not have a place to sit and is thus eliminated; the game proceeds until only one participant is left "standing."

Cosmo says that, after some cajoling by the emcee, Terrance Phillips, he agreed to participate in the game. For the initial round of the game, the players

were told to each retrieve a chair from the deck and to return with it to the stage. Cosmo recalls a fellow player falling on the way back during this first round but didn't recall any details about the person who fell or why that person fell. Cosmo also alleges that yet another participant fell during the next round as well. And then, during the third round, as Cosmo was returning with the next item, a book he had taken from another passenger, he himself fell. A closed-circuit-television video of Cosmo's fall shows that Cosmo appears to have been running, or at least hurrying, down an aisle between lounge chairs, back towards the stage area. However, instead of proceeding to the end of the aisle, Cosmo attempted a shortcut, or was trying to avoid a collision with another passenger, by jumping over the last lounge chair in the row. The video doesn't clearly depict the jump or the fall itself (the camera's line of sight is partially obstructed by people walking into and out of the frame). But, between what is visible on the video and Cosmo's testimony, the inescapable conclusion is indeed that Cosmo jumped over the lounge chair.[1]

According to Cosmo, after going over the chair, he "then slipped and fell" in a "big puddle of water from the pool." (Cosmo Dep., ECF No. 79-1, 215:24–25.) Cosmo testified that the puddle was not readily visible. (*E.g., id.* at 222:20 – 223:2.) Further, one of his experts also opines that the slip resistance of the deck, as he measured it, is below industry standards and is too slippery. (Pl.'s Resp. at ¶ 3.)

## 2. Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

---

[1] Although Cosmo refused to describe his flight over the chair as a "jump" in his deposition, in his opposition to Carnival's motion for summary judgment he indeed acknowledges, at least for the purposes of responding to Carnival's motion, that he "jumped over the end of a chaise lounge chair." (Pl.'s Resp., ECF No. 97, 2.)

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Discussion
### A. Applicable Law

Where a "[d]efendant's alleged tortious conduct occurred aboard a ship on navigable waters, federal admiralty law, not state law, governs [the p]laintiff's claims." *Stewart-Patterson v. Celebrity Cruises, Inc.*, No. 12-20902-CIV, 2012 WL 2979032, at *2 (S.D. Fla. July 20, 2012) (Cohn, J.). "But, when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Coastal Fuels Mktg., Inc. v. Florida Exp. Shipping Co.*, 207 F.3d 1247, 1251 (11th Cir. 2000). Similarly, in the absence of applicable maritime law, courts are also free to apply the reasoning used in other federal circuits, *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006) (Moreno, J.), as well as treatises and other scholarly resources, *Exxon Co. U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 839 (1996).

### B. Negligence

"To state a negligence claim under maritime law, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1319 (S.D. Fla. 2015) (Williams, J.) (citing *Chaparro v. Carnival Corp.,* 693 F.3d 1333,

1336 (11th Cir.2012)). In contending that it has no liability for Cosmo's fall, Carnival's principal focus is on Cosmo's leaping over the chair. In that regard, Carnival argues: Cosmo's decision to jump over the chair was the proximate cause of his fall; Carnival had no actual or constructive notice of injuries resulting from people jumping over chairs on the lido deck; and the risk of falling after jumping over the chair alone, never mind on the pool deck where there were likely to be puddles, was open and obvious. Alternatively, Carnival also submits that Cosmo has produced no evidence that Carnival had actual notice of the puddle of water next to the chair where Cosmo fell. Carnival also contends that the nature of the Last Man Standing game and its attendant risks are also open and obvious. Although the Court finds that Cosmo's hurdling over the chair was indeed most likely a contributing factor to his fall, the Court also concludes that Cosmo has produced sufficient evidence that could support a finding in Cosmo's favor, at least in part.

(1) **In viewing the evidence in the light most favorable to Cosmo, the Court cannot find that Cosmo's jump was necessarily the proximate cause of his injuries.**

Carnival contends that even if it breached its duty of reasonable care, Cosmo cannot establish that Carnival's breach proximately caused his injuries because Cosmo's jump over the chair broke the causal chain. However, Cosmo has presented enough evidence to show that there is a genuine issue of material fact regarding the causal chain that can only be resolved through trial. For example, Cosmo has provided testimony in support of his contention that the puddle in which he fell was not visible because the "Lido Pool Deck floor is shiny and the water blended with the flooring." (Pl.'s Resp. at ¶12.) Further, the evidence presented shows that Carnival chose to conduct the game, which involves participants hurrying to collect items to outpace their competitors, around an actively used pool area. Carnival's own employee acknowledged that the deck, next to the pool, would have water on it during the game. (*E.g.* Phillips Dep., ECF No. 82-1, 89:13–24.) Cosmo's deposition testimony also directly links the water to his fall: he said that it was when he "hit the puddle" that he slipped and fell. (*Id.*; Cosmo's Dep. at 37:7–9, 228:17–20.) Lastly, Cosmo presented expert testimony that the floor was excessively slippery. (Pl.'s Resp. at ¶ 72.) In sum, just because Cosmo's leap over the chair may have *contributed* to his fall does not mean that Carnival's breach was not a proximate cause as well. Based on the evidence before it, the Court cannot say that Cosmo's injury would have occurred regardless of whether the floor was wet and slippery where he landed.

The cases on which Carnival looks to to support its proximate-cause argument are unavailing. For example, Carnival looks to *Rodriguez v. Akal Sec., Inc.*, 534 F. App'x 921 (11th Cir. 2013) to support its contention that Cosmo's hurdling over the chair was an intervening cause, directly resulting in his injuries. Carnival's reliance is misplaced. In *Rodriguez*, a detainee at Krome Service Processing Center was injured after jumping, or falling, some seven feet down to the floor from the top of a piece of exercise equipment. *Id.* at 922. The plaintiff alleged that one of the guards supervising the gym had yelled "superman" just before he plummeted to the floor. *Id.* Nonetheless, the Eleventh Circuit concluded that summary judgment had been properly granted in the detention facility's favor on the detainee's negligence claim. *Id.* at 923. In so finding, the Eleventh Circuit noted that: (1) the exercise equipment itself was not a dangerous piece of equipment; (2) the danger associated with climbing to the top of the equipment was open and obvious; and (3) the plaintiff's own volitional act was the *sole* proximate cause of his injuries. *Id.* In contrast, here, Carnival created a situation where, as alleged by Cosmo, it knew, or should have known, that people would be hurrying to outpace their fellow competitors, in an environment where there were numerous obstacles and wet floors. Thus, unlike *Rodriguez*, the Court here cannot say that Cosmo "himself created [the] dangerous condition." *Id.* Additionally, here, Cosmo's allegations go beyond those set forth by the plaintiff in *Rodriguez* where the court found the detainee to be the "sole proximate cause of his injuries." To the contrary, in this case, Cosmo alleges that it was the puddle, the nature of the game, and its setting, and not the act of jumping, that caused his fall.

Carnival's resort to both *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1184 (S.D. Fla. 2013) (Scola, J.) and *Isbell*, 462 F. Supp. 2d at 1238 also fails to persuade. In both cases the courts each found that the plaintiffs had raised only a possibility that the defendant's breach had caused the alleged injuries. *In re Royal Caribbean*, 991 F. Supp. 2d at 1184 (finding that the plaintiff raised only the "mere possibility" that the defendant's breach resulted in her injury); *Isbell*, 462 F. Supp. 2d at 1238 (noting that there was "no testimony or evidence, other than Plaintiff's own personal opinion, that her damages resulted from" the alleged breach). Here, to the contrary, Cosmo specifically alleges that his fall, and resulting injuries, was proximately caused by Carnival's breach. That is, Cosmo has presented facts, which if believed, would directly link Carnival's organization of the game on the lido deck, amongst puddles and various obstacles, to his injuries.[2] His allegations are

---

[2] In its reply Carnival contends that Cosmo has abandoned any argument with respect to causation because he failed to voice any opposition in his response. The Court is still obligated,

sufficient to establish that Carnival's breach was a proximate cause of his injuries for the purposes of opposing Carnival's motion for summary judgment.

### (2) Carnival's arguments regarding notice miss the mark.

In the Eleventh Circuit, "the maritime standard of reasonable care usually requires that [a] cruise ship operator have actual or constructive knowledge of the risk-creating condition." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015). That is, in order to establish Carnival's liability, Cosmo must, "as a prerequisite" show that Carnival "had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir.1989) (finding that the cruise line's "liability thus hinges on whether it knew or should have known about the treacherous wet spot.").

Carnival submits that it is uncontroverted that there has never been a prior, similar incident involving someone falling and injuring themselves as a result of hurdling over a lounge chair next to the pool during the Last Man Standing game. Consequently, says Carnival, Cosmo can prove neither actual nor constructive notice. Carnival, however, misconstrues Cosmo's complaint. Cosmo does not contend that the chair, or his jumping, was the dangerous condition; rather he complains the floor was too slippery and Carnival's operation and management of the game was negligent. To that end, Cosmo submitted evidence that there have been at least twenty-nine slip-and-falls on the lido pool deck aboard Carnival's "Spirit Class" ships, which includes the *Miracle*. (Pl.'s Resp. ¶ 39.) These prior incidents are certainly sufficient to show that Carnival was on notice that the deck near the pool on the Spirit Class ships was in some way hazardous. See *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009) ("The requirement of substantial similarity is relaxed . . . when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect.") (quoting *Four Corners Helicopters, Inc. v. Turbomeca, S.A.,* 979 F.2d 1434, 1440 (10th Cir.1992)). Thus Cosmo's failure to present evidence that Carnival had notice of the dangerous condition created by passengers' leaping over lounge chairs does not warrant summary judgment in Carnival's favor. Additionally, "evidence of substantially similar accidents is

---

however, in such a situation, to consider the merits of unopposed arguments. *United States v. 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). The Court is not persuaded by the merits of Carnival's argument.

but one of the ways a plaintiff may prove a defendant's constructive notice of a defective condition"; it is certainly not the only way. *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1192–93 (S.D. Fla. 2016) (Williams, J.) (citing *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir.1988) ("We have held that 'evidence of similar accidents *might be* relevant to the defendant's notice . . .'.") (emphasis added)).

Moreover, Cosmo has presented evidence showing that Carnival had notice of the puddle itself as well as its associated dangerous nature and its position within the area designated for playing the game. Carnival's contention that Cosmo "failed to bring forth any evidence about how the alleged puddle formed and whether anyone from Carnival was aware of it prior to the incident" falls short. Certainly if Carnival didn't know about the puddle in which Cosmo fell, based on Cosmo's testimony, it certainly should have. Cosmo insists, in his deposition testimony, that for an hour and a half before his fall, he had been continuously looking at the area next to the chair where he slipped and he didn't see anyone drip or spill any liquids. (*E.g.*, Cosmo Dep. at 21:12–18.) Assuming the Court ultimately finds this testimony credible, the Court could infer that the puddle where Cosmo eventually fell had been on the deck for the entirety of that time. Since a court may not make credibility determinations in evaluating a motion for summary judgment, *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012), the Court finds this to be a sufficiently long period to establish constructive notice. *See Thomas*, 203 F. Supp. 3d at 1193 (noting that "Florida courts have found . . . 15–20 minutes" to be a "sufficient length of time," to establish constructive notice).

Cosmo also testified that he estimated the oblong puddle to be approximately five-feet long and two-feet across. Cosmo submitted evidence that Carnival's pool and deck supervisor noted that an area near the pool "was slightly wet due to continuous transit of guests entering and exiting the main pool." (Phillips Dep. at 92:13–25.) Although Carnival complains that this evidence is hearsay, the document on which Cosmo relies need not be authenticated for the purposes of opposing a motion for summary judgment. *Sanders v. Benjamin Moore & Co.*, No. 4:11-CV-0397-JEO, 2015 WL 1489855, at *38 (N.D. Ala. Mar. 31, 2015) ("Under the 2010 amendment [of Rule 56,] authentication of documents no longer is required at the summary judgment stage.") Instead, all that is required is "that evidence be presentable in admissible form at trial." *Abbott v. Elwood Staffing Servs., Inc.*, 44 F. Supp. 3d 1125, 1134 (N.D. Ala. 2014). If the opposing party believes that such materials "cannot be presented in a form that would be admissible in evidence," that party must file an objection to that effect. Fed. R. Civ. P. 56(c)(2). Carnival has not raised such an objection. Assuming, then, that the evidence establishes

that the puddle formed as a result of swimmers dripping water, over time, as they exited the pool, a factfinder could conclude that the puddle's size is circumstantial evidence that the defect had existed for a sufficient period of time to put Carnival on notice of its existence. *See Erickson v. Carnival Cruise Lines, Inc.*, 649 So. 2d 942, 943 (Fla. Dist. Ct. App. 1995) (noting that "constructive notice may be proved by circumstantial evidence such as the size of the puddle"). Carnival's suggestion that the puddle "could have easily come from children splashing in the water as from people exiting the pool," on the other hand is pure conjecture and cannot support an inference, in and of itself, that Carnival lacked notice. (Def.'s Mot. at 16.) Lastly, the deck where Cosmo fell is right next to a pool. Common sense would dictate that such proximity to an actively-used pool would result in the deck frequently accumulating pool water. In fact, Phillips, the game coordinator, testified to as much: he acknowledged that "chances are," the deck will not be dry prior to starting the game. (Phillips Dep. at 47:23–48:1.)

Lastly, Carnival was aware of a prior incident, approximately three months before Cosmo's fall, where a passenger fell, on the *Miracle*, on the lido deck, in the pool area, while participating in the Last Man Standing game. (Corp. Rep., Monica Petisco, Dep., ECF No. 81-1, 38:22–39:15.) This passenger slipped on the wet floor while running to collect an item during one of the rounds of the game. (*Id.* at 39:9–11.) Further, Phillips, the shipboard organizer of the game, acknowledged he was aware, prior to Cosmo's fall, that participants in the game run, rush, and jump to compete. (*E.g.*, Phillips Dep. at 110:13–18.) And Cosmo testified that two other participants had fallen returning to the stage in the two rounds prior to his own fall. Ultimately, then, the Court could infer from the record that Carnival was aware, or should have been aware, that the deck where the game was being played was wet; that when the deck was wet, it became slippery; and that, during the Last Man Standing game, participants were apt to run, jump, and rush. To the extent, then, that Carnival's motion for summary judgment is based on a lack of notice, its argument fails to connect. The issue of notice remains a genuine issue of material fact to be resolved at trial.

(3) **Carnival's focus on the open and obvious nature of the risk attendant to jumping over a chair and participating in the game is misplaced.**

Much like Carnival's argument that Cosmo's jump was the proximate cause of his fall, Carnival's focus on the open and obvious dangers associated with participating in the Last Man Standing game and jumping over the chair is equally unavailing. In support of its position, Carnival contends that "what

goes up, must come down," submitting, essentially, that jumping over a chair carries inherent risks that one will not be able to land safely. (Def.'s Mot. at 12.) Carnival also opines that the risk of falling while participating in such a fast-paced game, as Cosmo describes it, on the pool deck was also open and obvious.

In support of its position, Carnival relies principally on the reasoning presented in *Vollman v. Royal Caribbean Cruises Ltd.*, No. 10-20062-CIV, 2011 WL 10636189 (S.D. Fla. Mar. 16, 2011) (Brown, Mag. J.). Although this case bears some similarities to Cosmo's, it differs in key respects. In *Vollman*, the plaintiff, like Cosmo, voluntarily opted to participate in a similar scavenger-hunt type game on a cruise ship. *Id.* at *1. However, in *Vollman*, the game was played in an arena, ringed by stadium-style seating. *Id.* The plaintiff in that case, in her haste to reach the emcee via the quickest route possible, ran down a flight of stairs towards the stage floor and attempted to launch herself over a guardrail. *Id.* In vaulting over the rail, the plaintiff slipped and fell. *Id.* at *2. The plaintiff contended that the cruise line was responsible for her injuries because it had failed to safely manage the game, in particular by neglecting to provide safe access to the stage floor. *Id.* at *3.

In finding for the defendant cruise line, the court in *Vollman* recognized a number of factors that are not present in Cosmo's case. For example, the plaintiff there focused her claim only on the dangerousness of the game and the railing itself. *Id.* at *4. In finding in that defendant's favor, the court in *Vollman* specifically noted that it was just as "plausible that [the p]laintiff fell solely due to the condition of the floor," once she landed, as due to the nature of the game and the placement of the railing. *Id.* at *6. But in *Vollman*, the plaintiff produced "no evidence of (1) what was on the floor, if anything; (2) how it got there; (3) how long it was there; (4) anything that would put defendant on notice of same." *Id.* at *6 n. 7. Here, in contrast, Cosmo has presented evidence, as specified above, that: where he fell there was a large puddle of water on the floor, that likely came from the nearby pool; the water had been there for at least an hour and a half; and Carnival had, at a minimum, constructive, if not actual, notice of the water. Additionally, unlike in *Vollman*, here there is evidence that participants in the Last Man Standing game were rewarded for out pacing their fellow competitors.

Furthermore, Carnival's argument that the various risks attendant to participating in the Last Man Standing game were open and obvious is defeated by the evidence Cosmo has submitted showing the floor was *unreasonably* slippery. *See Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1095 (S.D. Fla. 214) (Bloom, J.) (finding that lack of slip resistance of wet tile was not necessarily open and obvious). Carnival, in its motion, contends that Cosmo

should have known that the deck could have been wet based on its proximity to the pool. (Def.'s Mot. at 14.) And, armed with this knowledge, Cosmo should have realized that mixing that condition with the raucous and fast-paced nature of the game placed him at risk for injury, especially if he chose to jump over the chair. However, because Cosmo has submitted evidence that (1) Carnival knew people rush, run, and jump during the game and (2) Carnival's floors are *excessively* slippery when wet, he survives summary judgment. The Court here cannot find that the risks were necessarily obvious to Cosmo: Cosmo has presented sufficient evidence from which a fact finder could infer that Carnival chose to stage the game in an area where water was likely to be on the floor; where the floors were unreasonably slick; and where Carnival knew people would be hurrying in order to effectively compete in the game. That combination gets Cosmo past summary judgment.

### 4. Conclusion

In accordance with the foregoing, Carnival's motion for final summary judgment (**ECF No. 76**) is **denied**. The Court notes, though, while Cosmo has survived summary judgment, his decision to catapult himself over the lounge chair, however, will likely limit him, depending on the Court's findings of fact, to only a partial recovery.

**Done and ordered** in chambers, at Miami, Florida, on September 18, 2017.

Robert N. Scola, Jr.
United States District Judge